UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PHILLIP T. BILLINGSLEY, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:21-CV-55-HAB |
| OFFICER CHRISTIAN LICHTSINN and OFFICER CHARLES SMITH, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff has a special talent for attracting the attention of the Fort Wayne Police Department ("FWPD"). Plaintiff's interactions with the FWPD in 2019 undergird the lawsuit. After considering the motion and the evidence designated by the parties, the Court cannot conclude that Defendants' actions violated Plaintiff's clearly established constitutional rights. Defendants are entitled to summary judgment on Plaintiff's federal claims.

**I.     Factual Background[1]**

The parties have identified three interactions between Plaintiff and law enforcement. The Court will address each in turn.

**A.     *February 8, 2019***

On this day, Officer Christian Lichtsinn ("Lichtsinn") of the FWPD was conducting traffic control in the early afternoon. Lichtsinn ran the license plate for a white Ford sedan and found that

---

[1] Indiana Rule of Appellate Procedure 46(A)(6)(c) counsels lawyers to present their statement of facts "in narrative form" rather than a "witness by witness summary of the testimony." This rule, of course, does not apply in this Court, but it is sage advice all the same. Defendants' presentation of facts, which is little more than a recreation of witness affidavits, is the definition of a witness-by-witness summary. Such a presentation makes the Court's job of discerning the relevant facts unnecessarily difficult, in that it must piece together snippets from different affidavits, spread across several pages, to form a cogent narrative.

it was registered to Plaintiff. Lichtsinn's in-car computer showed that Plaintiff's driver's license was suspended. The computer also showed several alerts for Plaintiff, including "Party Armed", "Felon", "Use Extreme Caution", "A Known Resistor" [sic], "Assaulted Police Officers", and a prior involuntary commitment.

Believing that Plaintiff was driving on a suspended license, Lichtsinn began a traffic stop. Plaintiff was slow to pull over. When he finally stopped, it was in the median of the road, not on the side. Lichtsinn approached the car and asked the driver, Plaintiff, if he was the registered owner of the vehicle. Plaintiff said that he was. Lichtsinn informed Plaintiff that he was being stopped for driving on a suspended license. Plaintiff disagreed, and a verbal argument about the status of Plaintiff's license ensued.

Sometime during the conversation, Lichtsinn noticed the smell of "raw marijuana" coming from the car. Once backup arrived, Lichtsinn asked Plaintiff to step out of the car. Plaintiff was patted down, but no contraband was found. Lichtsinn's search of the car's interior also produced nothing. Lichtsinn gave Plaintiff a verbal warning for driving without a license and instructed Plaintiff to move his car off the roadway.

Litchsinn then left the scene but did so without returning Plaintiff's ID and insurance information. Wanting his paperwork back, Plaintiff followed Litchsinn, honking all the while. Lichtsinn pulled into a gas station, got out of his patrol car, and returned the information. Lichtsinn again told Plaintiff that he could not drive because of his suspended license.

Later that day, Officer Charles Smith ("Smith") observed Plaintiff's car drive past him. After confirming that the car was registered to Plaintiff, and after confirming that Plaintiff's license was suspended, Smith began a traffic stop. Plaintiff did not stop immediately, instead proceeding to the parking lot of a nearby gas station.

Smith visually confirmed that Plaintiff was the driver. Smith knew that Plaintiff was stopped by Lichtsinn earlier in the day for driving on a suspended license, so he decided to tow Plaintiff's car to keep him from further driving. Smith asked Plaintiff to exit the car four times, and Plaintiff responded each time asking why. Aggravated, Smith finally told Plaintiff that if he did not exit the car, he would be arrested. This gained Plaintiff's compliance.

According to Smith, he decided that Plaintiff needed to be handcuffed because of Plaintiff's prior interactions with law enforcement, including Lichtsinn's stop earlier in the day. Plaintiff almost immediately began screaming when the handcuff was applied to his right hand. The Court has viewed Smith's in-car camera recording and, at least in the Court's opinion, Plaintiff's screaming seemed more performative than in response to actual pain. After a brief struggle, Smith cuffed Plaintiff's left hand. Plaintiff continued to scream about his arm, so Smith uncuffed Plaintiff's right wrist and used two sets of handcuffs to restrain Plaintiff. This entire struggle took less than a minute, and Smith promptly addressed Plaintiff's complaints of pain.

With Plaintiff secured, Smith began a pre-tow inventory of Plaintiff's car. No contraband was found. Smith then returned to his squad car and wrote a ticket for driving on a suspended license. Smith explained the citation to Plaintiff, and Plaintiff confirmed he understood. With Plaintiff now calm, the handcuffs were removed.

It was at this point that Plaintiff informed the officers on-scene that he had an Alabama driver's license. Smith verified this. But Smith believed that the Alabama license was invalid, since the car's registration showed that Plaintiff had lived in Indiana for more than sixty days. So Smith continued with the pre-tow inventory and, when the inventory was completed, Plaintiff's car was towed away.

Plaintiff was picked up from the scene by an unknown driver and followed the tow truck to the tow lot. Plaintiff went to the tow lot office and repeatedly called 911, asking to speak with a sergeant or lieutenant. At some point it was determined that, in fact, Plaintiff did have a valid Alabama license. As a result, Smith changed the citation from driving while suspended to driving without a license in his possession.

**B.**   *May 21, 2019*

On this day, Lichtsinn saw Plaintiff's car multiple times in what Lichtsinn describes as an "area known for drug activity, including people sitting in their vehicles and smoking illicit drugs." Given the area, and his prior interactions with Plaintiff, Lichtsinn decided to approach Plaintiff's car. Plaintiff was, in fact, in the car and, in fact, admitted to Lichtsinn that he had smoked marijuana in the car. According to Lichtsinn, this admission changed a consensual encounter into an investigative encounter, and Plaintiff was no longer free to leave.

Plaintiff apparently had enough of this interaction, so he exited the car and began walking away. Lichtsinn claims that Plaintiff was reaching into his pockets as he walked. This alarmed Litchsinn, and Plaintiff was ordered to stop reaching into his pockets. When Plaintiff failed to immediately do so, Lichtsinn decided to detain him and ordered Plaintiff to put his hands behind his back. Plaintiff did not comply and continued to walk away.

At this point, Lichtsinn grabbed Plaintiff's arm. Plaintiff pulled away and continued his walk. Lichtsinn pulled his taser and ordered Plaintiff to put his hands behind his back. Plaintiff did not comply and began walking back toward his car. Litchsinn claims that this change in direction made him fear that Plaintiff was trying to retrieve a weapon from the car, so Lichtsinn holstered his taser and again tried to grab Plaintiff. Plaintiff, again, pulled away and continued walking.

Having now failed twice to secure Plaintiff, Lichtsinn pulled his taser again and tased Plaintiff. This put Plaintiff on the ground.

With Plaintiff on the ground, Lichtsinn tried to place him in handcuffs. Plaintiff had other ideas and continued to pull away from Lichtsinn and other officers that had reported to the scene. This struggle went on for two to three minutes. During the struggle, Plaintiff was tased again and Lichtsinn kneed him in the back. Officers were only able to gain control over Plaintiff when Litchsinn pepper-sprayed him twice in the face. There was no further physical struggle. Plaintiff was charged with two counts of resisting law enforcement, one count of disorderly conduct, and one count of driving without a license.

As one might imagine, a several-minute-long fight between a motorist and officers in a residential area drew a crowd. Nearby residents, including Plaintiff's girlfriend, came out of their homes to film the interaction and yell at the officers. Plaintiff's girlfriend was so belligerent that she, too, was arrested.

C.  *August 8, 2019*

On this day, Lichtsinn observed a car with an obscured license plate. He pulled the car over and, wouldn't you know it, Plaintiff was the driver. Lichtsinn explained why Plaintiff was stopped and showed him the problem. The two men had a cordial interaction that ended with a verbal warning.

II.  Legal Discussion

A.  *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a

5

reasonable jury could rely to find in its favor.² *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.1998). That said, "a pro se litigant does not escape the essential burden under summary

---

² Plaintiff has filed what he called a Motion Requesting Judicial Notice (ECF No. 45), which has been fully briefed (ECF Nos. 46, 47). District courts can take judicial notice of any fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Civ. P. 201(b). Whether judicial notice applies here is irrelevant. A non-moving party need not produce evidence in a form that would be admissible at trial to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). So it is not necessary for the Court to take judicial notice of Plaintiff's exhibits to consider them now. In any event, the Court has treated Plaintiff's motion as a sur-reply in opposition to Defendants' motion for summary judgment and has considered the motion and the exhibits in rendering this decision.

judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990). So the nonmoving party, even if a *pro se* prisoner, cannot rely only on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Fed. R. Civ. P. 56(e); *Coleman v. Smith*, 828 F.2d 714, 717 (11th Cir.1987); *Brown v. Shinbaum*, 828 F.2d 707 (11th Cir.1987).

**B.**     ***Defendants are Entitled to Qualified Immunity***

Qualified immunity[3] shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). District courts have discretion to decide which of the two prongs of the qualified immunity analysis to tackle first. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

The Court recognizes that the parties' versions of events do not line up perfectly, particularly about Plaintiff's license status. Still, the mere existence of disputed facts is not enough to defeat summary judgment. Instead, for Plaintiff to prevail, the disputed facts must be material to the question of qualified immunity. *Hernandez v. Cook Cty. Sheriff's Off.*, 634 F.3d 906, 916 (7th Cir. 2011). Even if the Court accepts all Plaintiff's facts as true, the right he seeks to vindicate is not clearly established.

---

[3] Plaintiff alleges violations of both the Fourth and Fourteenth Amendments. Distinguishing between the two is not critical for the qualified immunity decision. Indeed, the Seventh Circuit has explained that it made "no difference that our circuit caselaw situated the constitutional violation in the Due Process Clause rather than the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019).

Two recent decisions from the Supreme Court of the United States have clarified what it means for a right to be "clearly established." *See City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021); *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4 (2021). Both cases emphasize that clearly established law cannot be defined "at too high a level of generality." *Bond*, 142 S.Ct. at 11. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (internal quotations omitted).

Fourth Amendment cases call for particular specificity, as it is "sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id*. at 11–12. Thus, to show a violation of clearly established law, Plaintiff must identify a case that put Defendants on notice that their specific conduct was unlawful. *Cortesluna*, 142 S.Ct. at 8.[4]

Plaintiff has failed in this task. Although Plaintiff has provided the Court with long excerpts from legal treatises discussing qualified immunity generally, he never tries to identify cases that speak to his circumstances. For instance, he has identified no case finding that an officer violates the Constitution when he mistakenly concludes, based on records from his state, that a driver is unlicensed when records from another state show otherwise. He has identified no case finding that the force used against him violated the Constitution considering his physical resistance. Instead, Plaintiff's analysis is at the "high level of generality" that the Supreme Court has held insufficient to defeat the assertion of qualified immunity.

---

[4] There is some suggestion in *Cortesluna* that the case must come from the Supreme Court of the United States. *Cortesluna*, 142 S.Ct. at 8 ("Even assuming that Circuit precedent can clearly establish law for purposes of § 1983 . . ..")

With no specific cases offered, Plaintiff has failed to identify a single precedent finding a Fourth Amendment violation under similar circumstances. As a result, Defendants are entitled to qualified immunity on Plaintiff's federal constitutional claims. *Bond*, 142 S.Ct. at 12.

### C. *Remaining State Law Claims*

For the reasons stated above, the Court will grant Defendants' motion for summary judgment on all federal claims. Because that disposition leads to the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state law claims and rule on Defendants' motion for summary judgment related to those claims.

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, sometimes there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

9

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claim on summary judgment, it has not delved deeply into the state law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there clearly are times when "a district court should exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. Still, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. This is a close call. The Court believes that Plaintiff's state law claims are likely without merit, but it

ultimately concludes that it cannot say with certainty that they are frivolous. While Plaintiff's state court claims arise out of the same facts as his now-defunct federal claims, they are still subject to distinct legal analysis.

In sum, the Court finds that none of the exceptions to the "usual practice" applies in this case. As a result, the Court denies Defendant's motion for summary judgment without prejudice on Plaintiff's state law claims and dismisses those claims with leave to refile in state court.

### III. Conclusion

For these reasons, the Court GRANTS Defendants' motion for summary judgment on all federal claims. The Court DENIES Defendants' motion for summary judgment on Plaintiff's state law claims. Those claims are DISMISSED WITHOUT PREJUDICE to refiling in state court. With no claims remaining, the Clerk is DIRECTED to enter judgment for Defendants and against Plaintiff.

SO ORDERED on May 10, 2022.

                     s/ Holly A. Brady
                     JUDGE HOLLY A. BRADY
                     UNITED STATES DISTRICT COURT